[No. A124268. First Dist., Div. One. June 3, 2010.]

CLORISTEEN COLLINS et al., Plaintiffs and Respondents, v.
PLANT INSULATION COMPANY, Defendant and Appellant.

## COUNSEL

Horvitz & Levy, Lisa Perrochet, Robert H. Wright; Burnham Brown, Eric R. Haas, Richard J. Finn, Ulla M. Pajala, Kevin M. Larson; McKenna, Long & Aldridge, Christopher W. Wood and Catherine Liu for Defendant and Appellant.

Shook, Hardy & Bacon and Patrick J. Gregory for Coalition for Litigation Justice, Inc., as Amicus Curiae on behalf of Defendant and Appellant.

Kazan, McClain, Lyons, Greenwood & Harley, James L. Oberman, Michael T. Stewart and Phillip Allan Harley for Plaintiffs and Respondents.

## OPINION

## BANKE, J.—

### I. INTRODUCTION

Defendant Plant Insulation Company appeals from the judgment against it in this asbestos case, claiming the trial court erred in excluding the United

States Navy from the list of entities as to which the jury could apportion "fault" pursuant to Proposition 51. We agree, and reverse and remand for a retrial on apportionment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

We set forth only those facts pertinent to the appeal. Plaintiffs and respondents Cloristeen Collins and Patricia Collins (plaintiffs) are, respectively, the wife and daughter of Ulysses Collins (Collins). Collins died on May 8, 2005, of mesothelioma contracted as a result of workplace exposure to asbestos. Collins worked as a welder at the Hunters Point Naval Shipyard from 1960 to 1973, and as a boilermaker welder at the Standard Oil refinery in Richmond from 1973 through 1976. His last job was at the Mare Island Naval Shipyard, where he worked as a structural welder and pipewelder from 1976 through 1994. Throughout his career, Collins worked extensively with asbestos and asbestos-containing products, including those distributed and installed by defendant Plant Insulation Company (Plant).

At the close of evidence, plaintiffs moved for a directed verdict regarding the Navy, arguing fault could not be allocated to the service pursuant to Proposition 51 (Civ. Code, § 1431 et seq.).[1] Citing *Munoz v. City of Union City* (2007) 148 Cal.App.4th 173 [55 Cal.Rptr.3d 393] (*Munoz*), they claimed federal sovereign immunity precluded the Navy from being a "tortfeasor" for purposes of Proposition 51. They further asserted there was no evidence of an exception to that immunity and thus no evidence the Navy breached any duty of care owed to Collins. Plant opposed the motion, arguing allocation was proper under *Taylor v. John Crane, Inc.* (2003) 113 Cal.App.4th 1063 [6 Cal.Rptr.3d 695] (*Taylor*), and there was sufficient evidence to include the Navy among the entities to which the jury could allocate fault. The trial court ruled *Munoz* was controlling, and granted plaintiffs' motion.

The special verdict form listed 17 entities, including Plant, among which the jury could allocate responsibility for Collins's injuries. During deliberations, the jury sent a note to the court asking why the Navy was "omitted from [the] list of responsibility allocation." The court responded "[a]s a matter of law you may not apportion to the U.S. Navy. Do not speculate as to why." The jury found Plant was negligent and liable under strict products liability, and allocated fault as follows: 20 percent to Plant, 15 percent to Fibreboard, 5 percent to Chevron/Standard Oil, 30 percent to Owens-Corning Fiberglas/FENCO/Kaylo, and 30 percent to Johns-Manville/Western Asbestos/Western MacArthur.

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

On November 7, 2008, the court issued judgment against Plant for $1,038,000 in economic damages, $400,000 for pain and suffering, $400,000 for loss of consortium, and $1 million in wrongful death damages ($600,000 to Collins's wife and $400,000 to his daughter). The judgment stated it "shall be amended nunc pro tunc to the date of its filing, today, November 7, 2009, [*sic*] when the Court makes its determinations as to costs and the amount by which the economic damages award shall be reduced to reflect plaintiffs' preverdict settlements with other defendants."[2] (Italics omitted.) On November 26, 2008, the court ordered the "judgment filed on November 7, 2008 . . . modified so that the economic damages awarded against Plant Insulation Company . . . shall be reduced by 10.349% of $9,139,490.46 or $945,845.87, for a net reduction of $93,104.13." This timely appeal by Plant followed.

### III. DISCUSSION

Plant challenges the trial court's ruling that excluded the Navy from the list of entities to which fault could be allocated pursuant to Proposition 51. There is no dispute the Navy is immune from liability for plaintiffs' asbestos claims. Whether the Navy's immunity precludes an allocation of fault under Proposition 51 turns on the nature and character of the immunity, and is a question of law we review de novo. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### A. *Proposition 51 and Fault Allocation to Immune Entities*

We first examine the purpose and scope of Proposition 51, and its application to individuals and entities immune from suit.

By 1986, when Proposition 51 was placed on the ballot, "the courts had eliminated certain inequities of the former tort recovery system, but so-called 'deep pocket' defendants whose fault was slight could still be saddled with large damage awards mainly attributable to the greater fault of others who were able to escape their full proportionate contribution. [Citation.] Proposition 51 sought to modify this system of recovery." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 599 [7 Cal.Rptr.2d 238, 828 P.2d 140] (*DaFonte*).)

"Proposition 51 first codified its purpose by adding section 1431.1 to the Civil Code. This statute decries the unfairness and cost of the 'deep pocket' rule to both 'governmental and private defendants' [citation] and cites the

---

[2] The judgment was actually entered on November 12, 2008.

exploitation of relatively blameless defendants who 'are perceived to have substantial financial resources or insurance coverage . . . .' [Citation.]" (*DaFonte, supra,* 2 Cal.4th at p. 599.) To "remedy these inequities," the statute declares "defendants in tort actions shall be held financially liable in closer proportion to their degree of fault. To treat them differently is unfair and inequitable." (§ 1431.1.) The statute further declares "reforms in the liability laws in tort actions are necessary and proper to avoid catastrophic economic consequences for state and local governmental bodies as well as private individuals and businesses." (*Ibid.*)

"To carry this intent into effect, Proposition 51 amended section 1431 and added section 1431.2. Amended section 1431 establishes a presumption that '[a]n obligation imposed upon several persons . . . is presumed to be joint, and not several, *except as provided in Section 1431.2* . . . .' (Italics added.) New section 1431.2 declares that in actions for wrongful death, personal injury, or property damage based on comparative fault, 'the liability of each defendant for non-economic damages shall be several only and shall not be joint.' The statute further specifies that '[e]ach defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.' " (*DaFonte, supra,* 2 Cal.4th at pp. 599–600, quoting § 1431.2, subd. (a).)

"Proposition 51 thus retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses. On the other hand, the more intangible and subjective categories of damage were limited by Proposition 51 to a rule of strict proportionate liability. With respect to these noneconomic damages, the plaintiff alone now assumes the risk that a proportionate contribution cannot be obtained from each person responsible for the injury." (*DaFonte, supra,* 2 Cal.4th at p. 600.)

Proposition 51 thus contemplates a defendant's fault will be "compared to all other 'fault' responsible for the injury." (*Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985, 998 [60 Cal.Rptr.2d 103, 928 P.2d 1181] (*Richards*).)[3] This follows from the express purpose of Proposition 51—"to eliminate the perceived unfairness of imposing 'all the damage' on defendants who were 'found to share [only] a fraction of the fault.' (§ 1431.1, subd. (b).) In this context, the only reasonable construction of section 1431.2 is that a 'defendant['s]' liability for noneconomic damages cannot exceed his

---

[3] *Richards*'s holding was subsequently abrogated by amendment of section 1714.45, to eliminate the tobacco companies' immunity from tobacco-related tort claims. (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840 [123 Cal.Rptr.2d 40, 50 P.3d 751] (*Myers*).)

or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries,* not merely that of 'defendant[s]' present in the lawsuit." (*DaFonte, supra,* 2 Cal.4th at p. 603.) Proposition 51 " 'quite clearly is simply intended to limit the potential liability of an individual defendant for noneconomic damages to a proportion commensurate with that defendant's . . . fault.' " (*DaFonte,* at p. 603.) The finder of fact must therefore consider all others whose conduct contributed to the plaintiff's injury, whether or not they are named as defendants and regardless of their economic circumstances. (*Id.* at pp. 600, 603.)

The statute "neither states nor implies an exception for damages attributable to the fault of persons who are immune from liability . . . ." (*DaFonte, supra,* 2 Cal.4th at p. 601.) As *DaFonte* and *Richards* illustrate, whether apportionment is proper with respect to an individual or entity immune from suit depends on the nature and character of the immunity.

In *DaFonte,* the plaintiff was injured at work when his hand was crushed in a mechanical grape harvester. He received benefits from his employer's workers' compensation insurer and sued the manufacturer of the harvester for negligence and product defect. (*DaFonte, supra,* 2 Cal.4th at p. 596.) His tort action was consolidated with the insurer's subrogation action against the manufacturer, and he subsequently prevailed at trial. (*Ibid.*) The jury allocated 45 percent of the fault to his employer, and the trial court commensurately reduced the noneconomic damages award against the manufacturer. (*Id.* at pp. 596–597.) The plaintiff appealed, arguing fault should not have been allocated to his employer because it was immune from tort liability under the workers' compensation law. (*Id.* at p. 600.)

After analyzing the intent and purpose of Proposition 51, the Supreme Court rejected the plaintiff's argument. (*DaFonte, supra,* 2 Cal.4th at pp. 601–604.) Under workers' compensation law, an employer is liable for statutory compensation "without regard to negligence," but is immune from "any other liability." (Lab. Code, § 3600, subd. (a).) The court explained that an employer's immunity from suit does not mean it owes no duty of care to its employees and cannot be characterized as being at "fault" for injuries suffered in the workplace for purposes of Proposition 51. (*DaFonte,* at p. 604, fn. 6.) "No substantial reason is asserted, let alone a 'compelling' one, why Proposition 51's manifest policy should not apply" to third party suits by injured workers. (*Id.* at pp. 603–604.)

In *Richards,* the plaintiff sued Owens-Illinois, Inc., for asbestos-related injuries. (*Richards, supra,* 14 Cal.4th at pp. 989–990.) The plaintiff was a smoker, and Owens asked that tobacco companies be included in the list of entities as to which fault could be allocated pursuant to Proposition 51,

regardless of the companies' statutory immunity at the time under former section 1714.45. (*Richards*, at pp. 990–991.) The trial court did not allow apportionment. (*Id.* at p. 991.) The Court of Appeal reversed, relying on *DaFonte*. (*Richards*, at pp. 991–992.)

The Supreme Court reversed the appellate court, explaining the tobacco companies' immunity was fundamentally different than the employer's immunity at issue in *DaFonte*. (*Richards, supra*, 14 Cal.4th at pp. 998–1004.) The tobacco companies' immunity was the result of a legislative decree that the companies' conduct simply was not wrongful, i.e., that the companies did not owe, and therefore could not breach, any duty of care in connection with the sale of cigarettes. (*Id.* at pp. 999–1002.) The language of the statute and legislative history demonstrated section 1714.45 represented "a legislative judgment that to the extent of the immunity afforded, such companies have no 'fault' or responsibility, in the legal sense, for harm caused by their products. To the same extent, such companies are thus not 'tortfeasors' to whom comparative 'fault' can be assigned for purposes of Proposition 51." (*Richards*, at p. 989.) "[T]he Legislature has determined, the mere manufacture and sale of such products create no *tortious* responsibility to *individuals* who voluntarily consumed them with the community's knowledge that they were unsafe." (*Id.* at p. 1002.) In short, "when the Immunity Statute was in effect, supplying pure and unadulterated tobacco products to knowing and voluntary consumers of those products was not subject to tort liability because it breached no legal duty and thus constituted no tort." (*Myers, supra*, 28 Cal.4th at p. 837, italics omitted.)

█ Thus, under *DaFonte* and *Richards*, whether fault can be allocated to an immune individual or entity under Proposition 51 depends on whether the immunity is essentially an immunity from suit, or whether it is based on a predicate determination the conduct in question is not wrongful under the law. Subsequent cases illustrate this distinction.

In *Ford v. Polaris Industries, Inc.* (2006) 139 Cal.App.4th 755 [43 Cal.Rptr.3d 215], for example, the plaintiff fell from a personal watercraft and was severely injured. She sued the operator of the watercraft for negligence and the manufacturer for product liability. (*Id.* at pp. 758, 764.) The operator successfully moved for summary judgment on the ground use of personal watercraft is an active sport to which primary assumption of risk principles apply. (*Ibid.*) The manufacturer nevertheless sought to include the operator among those persons or entities to which the jury could allocate fault. (*Id.* at p. 765.) The trial court denied the request, and the Court of Appeal affirmed. No fault could be apportioned to the operator, explained the court, because under primary assumption of risk principles, she owed no duty of care to the plaintiff and therefore "committed no tort." (*Id.* at p. 778.) Thus, "*Richards*, not *DaFonte*, controls." (*Ibid.*)

In *Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42 [71 Cal.Rptr.3d 415], the plaintiff, who had been convicted of assaulting a police officer based on the perjured testimony of the officers who arrested him, sued his criminal defense lawyer and her employer, Los Angeles County, for legal malpractice, and sued the officers and their employer for violating his civil rights. (*Id.* at pp. 48–51.) The jury not only found the public defender negligent, but apportioned 100 percent of the fault to the lawyer. (*Id.* at pp. 48–51, 56.) The trial court granted a new trial on the ground the jury's failure to apportion any fault to the police officers was against the weight of the evidence. The court rejected the plaintiff's argument the officers' statutory immunity precluded apportionment, stating the immunity was "irrelevant to the apportionment of fault under [Proposition 51]." (*Id.* at p. 56.) The Court of Appeal affirmed. "Proposition 51 requires the apportionment of fault to all alleged tortfeasors responsible for Ovando's injuries, including [the police officers], notwithstanding any immunity under Government Code section 821.6." (*Id.* at pp. 72–73.) The court explained, "[n]either the statutory language, nor the purpose of the statute, nor any other material that has been cited to us suggests that the immunity is based on a legislative determination that a public employee in those circumstances breaches no legal duty and bears no 'fault' for any injury caused." (*Id.* at p. 72.)

## B. *The Navy's Immunity*

With these legal principles in mind, we now examine the nature and character of the Navy's immunity.

■ "The United States, as sovereign, is immune from suit save as it consents to be sued . . . ." (*United States v. Sherwood* (1941) 312 U.S. 584, 586 [85 L.Ed. 1058, 61 S.Ct. 767]; accord, *Library of Congress v. Shaw* (1986) 478 U.S. 310, 315 [92 L.Ed.2d 250, 106 S.Ct. 2957], superseded by statute on another ground as stated in *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 251 [128 L.Ed.2d 229, 114 S.Ct. 1483].) The United States has "waived its immunity for a wide range of suits," including those brought under the Federal Tort Claims Act (FTCA) (28 U.S.C. § 2671 et seq.). (*Department of Army v. Blue Fox, Inc.* (1999) 525 U.S. 255, 260 [142 L.Ed.2d 718, 119 S.Ct. 687].)

■ The FTCA "provides that, subject to certain exceptions, '[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.' " (*Department of Army v. Blue Fox, Inc., supra,* 525 U.S. at p. 260, fn. 3, quoting 28 U.S.C. § 2674.) One such exception is for lawsuits "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal

agency or an employee of the Government, whether or not the discretion involved be abused." (28 U.S.C. § 2680(a).) To determine whether a lawsuit falls within this "discretionary function exception," the courts employ a twofold test. First, a court must consider whether the challenged conduct involved elements of judgment or choice. (*Berkovitz v. United States* (1988) 486 U.S. 531, 536 [100 L.Ed.2d 531, 108 S.Ct. 1954].) "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." (*Ibid.*) Second, a court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." (*Id.* at p. 536.) "[O]nly governmental actions and decisions based on considerations of public policy" fall within the exception. (*Id.* at p. 537.)

■ It is undisputed the Navy is immune from liability in this case by virtue of the "discretionary function exception" to the FTCA. This exception has been held to bar actions based on the federal government's alleged negligence in using asbestos on ships, failing to warn of its dangers, and promulgating an inadequate policy or having no policy for asbestos safety in shipyards. (*Sea-Land Service, Inc. v. United States* (3d Cir. 1990) 919 F.2d 888, 892–893; *Gordon v. Lykes Bros. S.S. Co., Inc.* (5th Cir. 1988) 835 F.2d 96, 99–100; *Shuman v. United States* (1st Cir. 1985) 765 F.2d 283, 290.)

■ Plant argues the Navy's immunity is essentially one from suit and does not mean the service owes no duty of care as to its enlisted personnel and civilian employees and thus cannot be characterized as a "tortfeasor" for purposes of Proposition 51. Plaintiffs contend sovereign immunity is based on the historical adage "the King can do no wrong" and therefore the Navy's actions cannot be "wrongful" and thus no "fault" can be allocated to the service. We agree with Plant and conclude the Navy is properly included among those entities to which fault may be apportioned in an asbestos case.

The discretionary function exception to the federal government's waiver of its sovereign immunity in the FTCA represents a policy decision by Congress that certain actions of the United States, even if wrongful, are immune from suit. The federal statute states: "The provisions of this chapter . . . shall not apply to . . . [¶] [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused.*" (28 U.S.C. § 2680(a), italics added.) The plain language of the statute thus acknowledges the federal government can "abuse" its discretion—an acknowledgement that would be superfluous absent recognition conduct by the government can, indeed, be wrongful.

In *Dalehite v. United States* (1953) 346 U.S. 15 [97 L.Ed. 1427, 73 S.Ct. 956],[4] the United States Supreme Court held the discretionary function exception extends to negligent conduct. "One only need read [title 28 United States Code section] 2680 [(containing the exceptions to the FTCA)] in its entirety to conclude that Congress exercised care to protect the Government from claims, *however negligently caused*, that affected the governmental functions." (*Dalehite*, at p. 32, italics added.) As the court explained, "[t]he exercise of discretion could not be abused [as expressly referenced in the statute] without negligence or a wrongful act." (*Id.* at p. 33.) The court observed its reading of the statute was further confirmed by the legislative history of the act. (*Id.* at p. 29, fn. 21.) The judiciary committees of both the Senate and House of Representatives stated: " 'The bill is not intended to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts *even though negligently performed* and involving an abuse of discretion.' " (*Ibid.*, quoting H.R.Rep. No. 2245, 77th Cong., 2d Sess., p. 10 (1942); Sen.Rep. No. 1196, 77th Cong., 2d Sess., p. 7 (1942); H.R.Rep. No. 1287, 79th Cong., 1st Sess., pp. 5-6 (1945), italics added; accord, *FDIC v. Meyer* (1994) 510 U.S. 471, 475 [127 L.Ed.2d 308, 114 S.Ct. 996] [FTCA "waived the sovereign immunity of the United States for certain *torts committed* by federal employees" (italics added)].)

The federal courts of appeals have likewise consistently stated the discretionary function exception protects the government from suit regardless of negligence. " '[A]t its root, the discretionary function exception is about power, not fairness. The sovereign has, by the exercise of its authority, reserved to itself the right to act without liability for *misjudgment and carelessness* in the formulation of policy.' " (*Walters v. U.S.* (8th Cir. 2007) 474 F.3d 1137, 1140, italics added, quoting *National Union Fire Ins. v. U.S.* (9th Cir. 1997) 115 F.3d 1415, 1422; see, e.g., *Grammatico v. U.S.* (7th Cir. 1997) 109 F.3d 1198, 1203 ["Once a discretionary function has been identified . . . the government may not be held liable for its *negligence* in carrying out the discretionary act . . . ." (italics added)]; *Sea-Land Service, Inc. v. United States, supra*, 919 F.2d at p. 892 ["the government may be *negligent* but nevertheless immune from tort liability" (italics added)]; 14 Wright et al., Federal Practice and Procedure (3d ed. 1998) Jurisdiction, § 3658.1, p. 639 ["once governmental actions have been labeled discretionary, it is immaterial whether those actions have been negligently performed for purposes of determining the applicability of the [discretionary function] exception . . ."].)

The discretionary function exception to the FTCA waiver is based on a "desire to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the

---

[4] Overruled on another ground as noted in *United States v. Varig Airlines* (1984) 467 U.S. 797, 813, footnote 10 [81 L.Ed.2d 660, 104 S.Ct. 2755].

medium of an action in tort." (*United States v. Varig Airlines, supra*, 467 U.S. at p. 814.) Thus, the nature of the immunity afforded by the discretionary function exception is not predicated on the notion the federal government owes no duty of care in connection with what it does, but rather is grounded on the determination that, given the myriad considerations that go into a discretionary decision, including economic and political costs, as well as the potential for harm to participants, it is not in the public's best interest to subject these decisions to post hoc examination in the crucible of tort litigation.

The federal government also has adopted an alternative compensation system for federal employees under the Federal Employees' Compensation Act (FECA), akin to the alternative compensation system provided by the California's workers' compensation law. The FECA provides, in part, "The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . [including for] [¶] . . . [¶] . . . [d]isability or death from a war-risk hazard . . . ." (5 U.S.C. § 8102(a)–(b).) "In enacting this provision, Congress adopted the principal compromise—the '*quid pro quo*'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." (*Lockheed Aircraft Corp. v. United States* (1983) 460 U.S. 190, 194 [74 L.Ed.2d 911, 103 S.Ct. 1033].) Similarly, the Veterans Benefits Act establishes "as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government"; and the disciplinary problems that would result if soldiers could sue their superiors " 'for negligent orders given or negligent acts committed in the course of military duty.' " (*Stencel Aero Engineering Corp. v. U.S.* (1977) 431 U.S. 666, 671–672 [52 L.Ed.2d 665, 97 S.Ct. 2054] (*Stencel*).)

Plaintiffs argue there is no evidence Collins was a civilian employee of the Navy covered under the FECA or an enlisted servicemember covered by the Veterans Benefits Act. This argument misses the mark. What these alternative compensation schemes reinforce is that federal immunity is immunity from suit, *not* a legislative decree the federal government can do no wrong and owes no duty of care to its employees and service personnel.

Plaintiffs' reliance on the old maxim "the King can do no wrong" is also misplaced. Although the United States looked to English common law when embracing the doctrine of sovereign immunity, it repudiated the fiction of an infallible monarch. The United States Supreme Court long ago described the maxim plaintiffs invoke as an "ancient and discredited doctrine." (*Dalehite v.*

*United States, supra,* 346 U.S. at p. 60 (dis. opn. of Jackson, J.).) "We have no king to whom it can be applied. The President . . . is the only *individual* to whom it could possibly have any relation. It cannot apply to him, because the Constitution admits that he may do wrong . . . ." (*Langford v. United States* (1879) 101 U.S. 341, 343 [25 L.Ed. 1010].) Thus, "the common-law fiction that '[t]he king . . . is not only incapable of doing wrong, but even of thinking wrong,' [citation] was rejected at the birth of the Republic." (*Clinton v. Jones* (1997) 520 U.S. 681, 697, fn. 24 [137 L.Ed.2d 945, 117 S.Ct. 1636], italics omitted; accord, *Feres v. United States* (1950) 340 U.S. 135, 139 [95 L.Ed. 152, 71 S.Ct. 153] (*Feres*) ["the political theory that the King could do no wrong was repudiated in America . . ."]; *Langford v. United States, supra,* 101 U.S. at p. 343 ["We do not understand that either in reference to the government of the United States, or of the several States, or of any of their officers, the English maxim has an existence in this country."].)

Moreover, "the meaning traditionally ascribed to this phrase is an ironic perversion of its original intent: 'The maxim merely meant that the King was not privileged to do wrong. If his acts were against the law, they were *injuriae* (wrongs). Bracton, while ambiguous in his several statements as to the relation between the King and the law, did not intend to convey the idea that he was incapable of committing a legal wrong.' " (*Owen v. City of Independence* (1980) 445 U.S. 622, 645, fn. 28 [63 L.Ed.2d 673, 100 S.Ct. 1398], quoting Borchard, *Government Liability in Tort* (1924) 34 Yale L.J. 1, 2, fn. 2.) As Justice Stevens has observed: "[T]he bloody path trod by English monarchs both before and after they reached the throne demonstrated the fictional character of any such assumption." (*Seminole Tribe of Fla. v. Florida* (1996) 517 U.S. 44, 95 [134 L.Ed.2d 252, 116 S.Ct. 1114] (dis. opn. of Stevens, J.).)

Federal sovereign immunity is thus grounded not on the notion the government is infallible and can do no wrong, but on the jurisdictional theory it must consent to suit before it can be sued for its wrongful conduct. (See, e.g., *United States v. Navajo Nation* (2009) 556 U.S. ___, ___ [173 L.Ed.2d 429, 129 S.Ct. 1547, 1551] [sovereign immunity reflects fundamental principle federal government "cannot be sued without its consent"]; *Library of Congress v. Shaw, supra,* 478 U.S. at p. 315; *United States v. Sherwood, supra,* 312 U.S. at p. 586.)

We therefore agree with the decision of our colleagues in *Taylor, supra,* 113 Cal.App.4th at page 1063, that fault may be allocated to the Navy under Proposition 51. In *Taylor,* a former Navy serviceman who contracted mesothelioma and his wife sued manufacturers of the asbestos-containing products with which he worked. (*Taylor,* at p. 1065.) The jury returned a verdict for the plaintiffs and allocated 31 percent of the fault to the defendant, 16

percent to the Navy, and the remaining percentage to other entities. (*Id.* at pp. 1066–1067.) The plaintiffs appealed, arguing the Navy was "immune from liability" and therefore "it was error to allocate fault to the Navy for purposes of calculating defendant's proportionate share of their noneconomic damages." (*Id.* at p. 1067.) The defendant argued the Navy was not "immune under either the discretionary immunity exception or the *Feres/Stencel* rule."[5] (113 Cal.App.4th at p. 1068.)

The Court of Appeal concluded it did not need to decide whether the discretionary function exception or the *Feres/Stencel* rule applied because "*even assuming the Navy was immune,* the trial court properly allowed the fault of the Navy to be taken into account in allocating responsibility for plaintiffs' injuries." (*Taylor, supra,* 113 Cal.App.4th at p. 1068, italics added.) The court explained, "*Richards* and *DaFonte* establish that under Proposition 51, fault will be allocated to an entity that is immune from *paying for* its tortious acts, but will not be allocated to an entity that is not a tortfeasor, that is, one whose actions have been declared not to be tortious. We are aware of no declaration stating the government breaches no duty to military personnel when it exercises its discretion or when a serviceman is injured in the course of military service. Indeed, the cases make clear the government is immune from claims based on such conduct *even if it has been negligent.*" (*Id.* at p. 1071.) The court therefore affirmed the allocation of fault to the Navy.[6] (113 Cal.App.4th at p. 1071.)

Plaintiffs argue *Taylor* is inapposite, pointing out "the words 'sovereign immunity' appear nowhere in the opinion." They contend *Taylor* "overlooked the fact that by default the Navy 'is not a tortfeasor,'" because "[d]ue to the parties' framing of the issues on appeal, the court in *Taylor* was not asked to consider, and therefore did not consider, the issue of sovereign immunity." True, the appellate court did not use the specific phrase "sovereign immunity." However, the court plainly was dealing with that issue given its reference to the discretionary function exception and the *Feres/Stencel* doctrine and its holding that, regardless of whether either of these exceptions to the FTCA applied, apportionment of fault to the Navy was proper. Thus,

[5] The *Feres* doctrine is another exception to the waiver of sovereign immunity in the FTCA for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." (*Feres, supra,* 340 U.S. at p. 146; see *Stencel, supra,* 431 U.S. 666.)

[6] For the same reason *Taylor* held there was no need to decide whether an exception to the FTCA applied, there is no merit to plaintiffs' argument that there is "no evidence" an exception applied here, rendering the Navy subject to suit. The issue is not whether there was a "waiver" of the Navy's immunity, but whether the character and nature of its immunity are such as to preclude an allocation of fault pursuant to Proposition 51. Like *Taylor,* we conclude the Navy's immunity does not preclude such an allocation.

*Taylor* did not "overlook" the Navy's sovereign immunity. Rather, it correctly held fault may be apportioned to the Navy under Proposition 51 because, although the Navy is immune from suit, no authority suggests it owes no duty of care to its service personnel and civilian employees. Indeed, all authority is to the contrary.

Plaintiffs also argue *Taylor* is no longer good law in light of *Munoz, supra,* 148 Cal.App.4th at page 173. In *Munoz,* the family of Lucilla Amaya sued the police officer who shot and killed her, and his employer, Union City. The officer had responded to a call Amaya might hurt herself or others because she was under the influence of drugs, had a knife, and had previously been committed for psychiatric evaluation. He shot her when she made a movement that "led him to believe she was going to kill her father and daughter." (*Id.* at p. 176.) The jury found the officer and city liable for battery and negligence and, as to the latter claim, apportioned 50 percent of the fault to the officer, 45 percent to the city and 5 percent to Amaya. (*Id.* at p. 175.) The Court of Appeal upheld the verdict against the officer for unreasonable use of force and against the city under vicarious liability. However, it reversed the verdict against the city based on its own direct negligence, holding the city could not be liable for direct negligence under the doctrine of sovereign immunity. (*Id.* at pp. 175, 180.) On remand, the trial court reduced the damages award by 45 percent, the percentage of fault allocated to the City. (*Id.* at pp. 177–178.)

In a second appeal, the plaintiffs argued the trial court erred in reducing the judgment, rather than increasing the officer's percentage of fault. The Court of Appeal agreed, stating "[s]ince Union City was not a tortfeasor, there was no basis for allocating a portion of the damages [to it] under principles applicable when two or more defendants are legally at fault." (*Munoz, supra,* 148 Cal.App.4th at p. 182.) "In the absence of duty, there can be no tort liability, and no fault can be allocated to a party that is not a tortfeasor. [Citations.] It necessarily follows that no portion of the fault could be allocated to Union City . . . ." (*Ibid.*)

*Munoz* considered only the immunities created by California's Government Code to shield California "public entities" as defined and specified by the state statute. It did not consider, let alone analyze, the character of the Navy's immunity. Further, it acknowledged *Taylor*'s holding and quoted the Court of Appeal's pivotal statement that it was " 'aware of no declaration stating the government breaches no duty to military personnel when it exercises its

discretion or when a serviceman is injured in the course of military service. Indeed, the cases make clear the [federal] government is immune from claims based on such conduct even if it has been negligent.' " (*Munoz, supra,* 148 Cal.App.4th at p. 181, italics omitted, quoting *Taylor, supra,* 113 Cal.App.4th at p. 1071.)[7]

■ We thus conclude the trial court erred in excluding the Navy from the list of entities as to which the jury could apportion fault pursuant to Proposition 51. Since the evidence was sufficient to support an apportionment of fault to the Navy, the error was prejudicial, requiring reversal of the judgment.

## C. *Scope of Retrial*

Plaintiffs argue a retrial should be limited to apportionment of fault. Plant maintains there should be a new trial on all issues.

■ A limited retrial may be ordered if the issue to be tried " 'can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial.' " (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 774–776 [63 Cal.Rptr.2d 859, 937 P.2d 290].) In *O'Kelly v. Willig Freight Lines* (1977) 66 Cal.App.3d 578 [136 Cal.Rptr. 171] (*O'Kelly*), the Court of Appeal limited retrial to the issue of apportionment. The court explained: "It is true that, in order to make a proper allocation of damage, the jury on the new trial will have to hear, and weigh, anew, all of the evidence dealing with the conduct of the parties, but the jury may, properly, be told, when the case is submitted to them that: (a) as matter of the law of this case, they must find that each party is negligent in some degree; (b) they must proceed on the assumption that the total damage was [the amount found by the first jury]; and (c) their sole function is to apportion that total damage between the parties." (*Id.* at p. 583.)

There has been no challenge to the jury's liability verdict here, and we agree that, as in *O'Kelly*, a retrial can properly be limited to the issue of apportionment of fault without causing "confusion or uncertainty."

---

[7] We also note trial courts in asbestos cases have routinely used verdict forms listing the Navy as one of the entities among which fault may be apportioned. (See, e.g., *Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 507 [25 Cal.Rptr.3d 584, 107 P.3d 254]; *Oxford v. Foster Wheeler LLC* (2009) 177 Cal.App.4th 700, 714, fn. 5 [99 Cal.Rptr.3d 418].)

## IV. DISPOSITION

The judgment is reversed and the case remanded for a retrial limited to apportionment of fault. The entities on the list among which the jury on retrial can apportion fault shall include the Navy and the entities to which some percentage of fault was assigned by the jury in the first trial.

Margulies, Acting P. J., and Dondero, J., concurred.

A petition for a rehearing was denied July 2, 2010, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied August 11, 2010, S184316. George, C. J., did not participate therein.