Filed 11/1/23  Hedding-Kelton v. Madrigal CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ARIANNA HEDDING-KELTON, a Minor, etc., et al., | C095876 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34201700213129CUPOGDS) |
| v. | |
| MONICA MADRIGAL et al., | |
| Defendants and Appellants. | |

Plaintiff Arianna Hedding-Kelton (Kelton) was bit by a dog named Munch when she visited the home of defendants Monica Madrigal and her husband Oscar Madrigal. Kelton and her mother, Jasmine Lawson (Lawson; collectively with Kelton, plaintiffs), sued defendants for strict liability, negligence, and negligent infliction of emotional

1

distress. A jury found Monica[1] negligent in causing harm to plaintiffs but also found defendants did not own Munch.

Monica contends the trial court prejudicially erred in failing to instruct the jury to consider apportioning liability between her and Minh Do (Do), to whom she rented a room in her home. She claims Do owned Munch and was strictly liable for Kelton's injuries. We agree and remand the matter for a retrial limited to the issue of apportionment of fault.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Dog Bite*

Defendants leased a bedroom in their house to Do and allowed Do to keep Munch in the house. In exchange, Do agreed to increase his monthly rent. Do fed and walked Munch, and Munch slept in Do's bedroom at night. When Do was away, his family would come to defendants' house and care for Munch. Defendants would ensure that Munch's basic needs were met when neither Do nor his family were home.

Plaintiffs occasionally stayed at defendants' house. When they visited, either defendants or Do would reintroduce Munch to Kelton, and Munch would usually stay in Do's bedroom or in the backyard.

During one of plaintiffs' stays, Do let Munch out in the backyard and went back to his bedroom. Kelton asked Monica for permission to play with Munch outside. Monica agreed and let Kelton out, but she did not reintroduce Munch to Kelton. Shortly after Kelton went outside, Munch bit her.

After the attack, Oscar convinced Do to surrender Munch to animal control, and Do signed relevant paperwork as Munch's owner.

---

[1] We use first names to differentiate between defendants.

*Trial Proceedings*

Plaintiffs sued defendants and Do for strict liability, negligence, and negligent infliction of emotional distress. Defendants filed a cross-complaint against Do. Subsequently, the trial court entered a default judgment against Do at defendants' request, and plaintiffs dismissed Do from their complaint without prejudice.

Plaintiffs made an offer to compromise under Civil Code section 998. (Further statutory references are to the Civil Code.) Specifically, they offered to "allow judgment to be taken by said Plaintiffs against Defendants . . . in the sum of $300,000." Defendants did not accept the offer.

Before trial started, counsel for defendants pointed out "the jury instructions submitted by the plaintiff omitted a number having to do with the different theories of liability, damage and the presence of the party Minh Do as well." The trial court interrupted: "Minh Do is dismissed, isn't he?" After confirming that Do was dismissed and a default judgment was entered against Do , the trial court stated Do "can't participate in . . . the proceedings" and "in terms of putting him on the jury verdict form, I don't see why we would do that . . . He's not participating as a party. He hasn't asked for relief from default. So he's not participating in that fashion."

Near the end of trial, the trial court asked counsel for both sides if they had any objections to the proposed jury instruction regarding strict liability, which included only defendants. Counsel for defendants answered: "None other than Minh Do."

Defendants also proposed CACI No. 406 regarding apportionment of fault among joint tortfeasors. The instruction stated in full: "Oscar and Monica Madrigal claim that the fault of Minh Do contributed to Plaintiffs' harm. To succeed on this claim, defendant must prove both of the following: 1.) That Minh Do was at fault; and 2.) That the fault of Minh Do was a substantial factor in causing Plaintiffs' harm. If you find that the fault of more than one person including defendants and Oscar and Monica Madrigal Minh Do was a substantial factor in causing Plaintiffs' harm, you must then decide how much

3

responsibility each has by assigning percentages of responsibility to each person listed on the verdict from. The percentage must total 100 percent. [¶] You will make a separate finding of plaintiffs' total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility." The trial court refused to give this instruction to the jury, finding lack of "substantial evidence to support an instruction for Prop. 51."

The jury found that Monica was negligent and her negligence was a substantial factor in causing harm to plaintiffs. It awarded $273,000 in noneconomic damages to Kelton and $24,000 in noneconomic damages to Lawson. The jury further found that defendants did not own Munch.

On January 7, 2022, the trial court entered a judgment ordering defendants to pay plaintiffs $297,000. On May 3, 2022, the trial court entered a corrected and amended judgment against Monica, ordering her to pay $273,000 to Kelton and $24,000 to Lawson, as well as costs and accrued prejudgment interest under sections 998 and 3291. The second judgment supersedes the first and becomes the appealable judgment because it substantially altered the first judgment by ordering only Monica to pay damages and costs to plaintiffs. (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842; *CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1049.) Monica timely appealed.

## DISCUSSION

### I

### *Standard of Review*

"When the contention on appeal is that the trial court failed to give a requested instruction, we review the record in the light most favorable to the party proposing the instruction to determine whether it was warranted by substantial evidence." (*Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 475.) But we do not reverse a judgment for instructional error in a civil case unless the error has resulted

4

in a miscarriage of justice. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) "A 'miscarriage of justice' exists when, after examining all the evidence, we conclude ' " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error.' " ' " (*Weaver v. Chavez* (2005) 133 Cal.App.4th 1350, 1356.)

## II

### *Forfeiture*

Plaintiffs contend that Monica forfeited her apportionment claim based on Do's strict liability because she did not raise this issue at trial. We disagree.

Before trial ended, defense counsel stated he had no objection "other than Minh Do" regarding the proposed strict liability jury instruction, which included only defendants. He also proposed CACI No. 406 requesting the jury to apportion liability between defendants and Do if they decided Do was "at fault" and his fault was a substantial factor in causing harm to plaintiffs. CACI No. 406 allows a party to describe a tortfeasor's liability as "negligence" or "fault." The directions of use for CACI No. 406 state that a party should "select 'fault' if there is a need to allocate responsibility between tortfeasors whose alleged liability is based on conduct other than negligence, e.g., strict products liability." By selecting "fault" in their proposed CACI No. 406 instruction, defendants sought to apportion their responsibility with Do on a strict liability theory. These actions were sufficient to preserve defendants' apportionment claim.

## III

### *Apportionment of Fault*

Monica contends the trial court prejudicially erred in refusing to instruct the jury to apportion responsibility to Do, who is strictly liable to Kelton. We agree.

A. *Do's Liability*

We first consider Do's liability because "there must be substantial evidence that a nonparty is at fault before damages can be apportioned to that nonparty." (*Scott v. C.R.*

5

*Bard, Inc.* (2014) 231 Cal.App.4th 763, 785.) "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp., supra*, 8 Cal.4th at p. 572.) Substantial evidence necessary to support a jury instruction is evidence from which a reasonable jury could have concluded that particular facts underlying the instruction did exist. (*Bay Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 465-466.)

"The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." (§ 3342, subd. (a).) "Subdivision (a) of section 3342 has been recognized as imposing a duty of care on every dog owner to prevent his or her dog from biting persons in a public place or lawfully in a private place." (*Priebe v. Nelson* (2006) 39 Cal.4th 1112, 1120.) It is "designed 'to prevent dogs from becoming a hazard to the community' [citation] by holding dog owners to such a standard of care, and assigning strict liability for its breach." (*Ibid.*)

Here, substantial evidence showed Do owned Munch. Do sought permission from defendants to bring Munch into the house, and in return paid an increased rent. He fed and exercised Munch, and Munch slept in Do's bedroom. When Do was away, he would arrange for Munch's care. After the attack, Do signed the paperwork for animal control as Munch's owner. A reasonable jury could have concluded from this evidence that Do owned Munch, and that such ownership was a substantial factor in causing harm to Kelton. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 969 ["The substantial factor standard generally produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct"].)

6

Substantial evidence also shows Kelton was lawfully in a private place where the bite occurred. Defendants invited her to stay at their house, and Monica permitted Kelton to enter the backyard. Contrary to plaintiffs' assertion, Do's consent to Kelton's visit or entry to the backyard is immaterial. Section 3342, subdivision (a) requires only that the person is "lawfully in a private place" including, but not limited to, the dog owner's property. Because Kelton was lawfully in defendants' house, Do's lack of consent does not preclude liability under section 3342.

### B. Applicability of Proposition 51

We now consider whether Proposition 51 requires apportionment of responsibility between a negligent defendant and a strictly liable nonparty.

Section 1431.2, subdivision (a), adopted by the voters in 1986 as Proposition 51, requires apportionment of noneconomic damages among all persons whose fault contributed to the same indivisible injury, including nonparties, "[i]n any action for personal injury . . . based upon principles of comparative fault." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 71.)

"Proposition 51 neither refers to strict liability nor defines 'fault' or 'comparative fault.' " (*Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 626.) But there was longstanding Supreme Court authority applying comparative fault doctrines to allocate fault between strictly liable and negligent parties before the adoption of Proposition 51. In *Daly v. General Motors Corp.* (1978) 20 Cal.3d 725, our Supreme Court extended the comparative fault principles to apportion damages between a strictly liable defendant and a negligent plaintiff; the same court in *Safeway Stores, Inc. v. Nest-Kart* (1978) 21 Cal.3d 322 held that the comparative fault principles may be used as a basis for apportioning damages between a negligent defendant and a strictly liable defendant. In so holding, the court noted that "the term 'equitable apportionment of loss' is more accurately descriptive of the process" of assigning liability among tortfeasors. (*Daly v. General Motors Corp.*, at p. 742; see also *Wilson v. John Crane, Inc.* (2000)

7

81 Cal.App.4th 847, 854 ["A more accurate label might well have been something like 'comparative responsibility.' "]) It nevertheless adopted the term "comparative fault" because it "has gained such wide acceptance by courts and in the literature." (*Daly v. General Motors Corp.,* at p. 742.)

We presume the voters were aware of existing law at the time Proposition 51 was enacted. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048.) "We also presume voters were aware of the judicial interpretation of those laws and that they intended for the same interpretation to apply to related laws with identical or substantially similar language." (*People v. Jessup* (2020) 50 Cal.App.5th 83, 88.)

Therefore, Proposition 51 applies to apportion noneconomic damages between a negligent defendant and a strictly liable nonparty. The trial court erred in refusing to instruct the jury to apportion damages between Monica and Do based on Do's strict liability. Had this instruction been given, the jury could have concluded Do was at fault for plaintiffs' injuries and lowered the damages allocated to Monica. Remand is therefore necessary. (*Weaver v. Chavez, supra*, 133 Cal.App.4th at p. 1356; *Collins v. Plant Insulation Co.* (2010) 185 Cal.App.4th 260, 276.)

Plaintiffs nevertheless contend that Proposition 51 does not apply to statutorily imposed liability. They cite strict products liability cases and vicarious liability cases that, for policy reasons, treated certain tortfeasors as a single entity and declined application of Proposition 51 to apportion liability among those tortfeasors. (*Wimberly v. Derby Cycle Corp.*, *supra*, 56 Cal.App.4th at p. 633 & fn. 9 [treating parties in the same chain of production of a defective product as a single tortfeasor because otherwise they would avoid risks incident to their businesses]; *Miller v. Stouffer* (1992) 9 Cal.App.4th 70, 84 [treating a vicariously liable employer and a negligent employee as a single tortfeasor to prevent the employer from avoiding the risk incident to her enterprise]; *Rashtian v. BRAC-BH, Inc.* (1992) 9 Cal.App.4th 1847, 1854 [treating a vicariously liable

8

vehicle owner and a negligent driver of the vehicle as a single tortfeasor to avoid abrogation of vicarious tort liability].)[2] But plaintiffs do not argue Do and Monica should be treated as a single tortfeasor, and we decline to do so. Do and Monica are not comparable to parties in the same chain of production of a defective product, and neither Do nor Monica was vicariously liable for the other. In fact, barring apportionment would allow Do to escape liability incident to his dog ownership, defeating the purpose of section 3342.

Plaintiffs further argue that Proposition 51 does not apply because Do's liability was not based on fault. "The primary weakness in this argument is its reliance on a simplistic literalism blind to established usage." (*Wilson v. John Crane, Inc., supra*, 81 Cal.App.4th at p. 852.) We recognize that "strict liability" and "comparative fault" are imprecise terms. (*Id.* at p. 854.) But the system of comparative fault is ultimately one that apportions responsibility, whether the responsibility is based on negligence, strict liability, or other theories. (*Daly v. General Motors Corp., supra*, 20 Cal.3d at p. 742.) Indeed, our Supreme Court has cited in approval that " ' "[f]ault" includes acts or omissions . . . *that subject a person to strict tort liability.* ' " (*Id.* at p. 741.)

We also reject plaintiffs' contention that, because Do's liability was based on a "statutory technicality" and there was no evidence of Do's wrongdoing or culpability, the jury cannot evaluate the comparative fault between Monica and Do. "Juries are often confronted with apportioning fault among defendants sued on different theories of liability: 'Past California cases have made it clear that the "comparative fault" doctrine is

---

[2] Plaintiffs additionally cite *Romine v. Johnson Controls, Inc.* (2014) 224 Cal.App.4th 990. (RB 43) This case offers no help to their position. It noted the "split in authority of sorts" between *Wimberly* and *Arena v. Owens-Corning Fiberglas Corp.* (1998) 63 Cal.App.4th 1178. (*Romine,* at p. 1011.) Following *Arena*, it concluded the trial court erred in barring defendants from apportioning fault for the plaintiff's injuries to other manufacturers where evidence showed the injuries could have been caused by multiple products. (*Romine,* at pp. 1012-1013.)

a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an "equitable apportionment or allocation of loss." ' " (*Henry v. Superior Court* (2008) 160 Cal.App.4th 440, 461.)

Finally, plaintiffs contend that the trial court's error was not prejudicial because Monica's proposed jury instructions and verdict forms did not allow for apportionment based on negligence or strict liability, and she did not seek apportionment for damages to Lawson. But the trial court dismissed defense counsel's concerns that plaintiffs omitted Do from their proposed jury instructions on liability and ruled, erroneously, that Do could not be included on the jury verdict form because he was a nonparty. The subsequent jury instructions and verdict forms proposed by defendants, as well as their trial strategy, were counsel's " ' "endeavor[] to make the best of a bad situation for which he was not responsible." ' " (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212-213.) We do not hold this against Monica. She should be allowed the opportunity to submit proposed jury instructions and verdict forms that meet the requirement of Proposition 51.

Having concluded remand is necessary, we need not decide whether responsibility may also be apportioned to Do on a negligence theory.

IV

*Cost Award*

"An order awarding costs falls [within] a reversal of the judgment on which it is based." (*Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402.) Because we reverse the judgment, we also reverse the trial court's award of costs, including the prejudgment interest awarded under sections 998 and 3291. (See *Wagy v. Brown* (1994) 24 Cal.App.4th 1, 8 [prejudgment interest is an item of cost].)

DISPOSITION

The judgment is reversed and the matter is remanded for a retrial limited to the issue of apportionment of fault. On remand, the trial court is directed to instruct the jury to apportion responsibility between Monica and Do based on Do's strict liability. It may also in its sound discretion decide whether to instruct apportionment based on Do's negligence. Following the retrial, the court shall decide the proper cost award. Monica shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　MESIWALA, J.


We concur:


　/s/
MAURO, Acting P. J.


　/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.