Filed 4/29/14  Dubord v. Deluca CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SARA DUBORD, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> RICHARD DELUCA et al., <br><br> Defendants and Respondents. | D063254, D063841 <br><br><br> (Super. Ct. No. 37-2010-00056496-CU-PO-NC) |

APPEALS from a judgment and an order of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

Mardirossian & Associates, Garo Mardirossian, Armen Akaragian; Law Office of Arthur Paul Berg and Arthur Paul Berg for Plaintiff and Appellant.

Konoske Akiyama & Brust, Gregory P. Konoske and D. Amy Akiyama for Defendants and Respondents.

In these consolidated appeals, Sara Dubord challenges the judgment in her action against Richard and Dawn Deluca for personal injuries she suffered in a fire at a guest

house she rented on property the Delucas owned and the postjudgment order awarding the Delucas costs and expert witness fees. Dubord contends the jury improperly allocated half of the responsibility for her injuries to the tenant of the main house on the Delucas' property, who sublet the guest house; the jury awarded inadequate damages for future pain and suffering; and the trial court erroneously concluded the Delucas were entitled to costs based on Dubord's rejection of pretrial settlement offers that exceeded the amount of the judgment she recovered against the Delucas. We reject Dubord's contentions and affirm the judgment and the order awarding costs.

## FACTUAL AND PROCEDURAL BACKGROUND

The Delucas owned real property that included a main house and a guest house. They leased the property to Cedric Crespo. Crespo lived in the main house and, without the Delucas' permission, sublet the guest house to Dubord.

While Dubord was renting the guest house, she woke up one morning to find the bedroom full of smoke and the ceiling on fire. She was able to exit the guest house with burns she described as "nothing significant." As Dubord ran toward the main house for help, she heard her dogs crying inside the burning guest house. She ran back to the guest house, broke glass in a door in an unsuccessful attempt to unlock the door so the dogs could escape, and in the process suffered a second-degree burn over the dorsal aspect of her left forearm. After the fire, Dubord had nightmares about the fire and suffered bouts of anxiety and depression.

Dubord sued the Delucas and Crespo on multiple theories for damages for the personal injuries she sustained in the fire. Prior to trial, the Delucas made two written

2

offers to compromise pursuant to Code of Civil Procedure section 998, one for $12,001 and the other for $40,001. Dubord did not accept either offer, and the case proceeded to a jury trial against only the Delucas[1] on the theory their negligence in failing to install and maintain smoke detectors as required by law caused Dubord's injuries.[2]

The jury returned a special verdict finding the Delucas' negligence was a substantial factor in causing harm to Dubord. The jury found Dubord's damages were $12,000 for future medical expenses, $1,100 for past pain and suffering, and $0 for future pain and suffering. The jury also found Dubord and Crespo were both negligent, and the negligence of each was a substantial factor in causing harm to Dubord. The jury assigned the percentage of responsibility for Dubord's harm as follows: 20 percent to the Delucas, 30 percent to Dubord, and 50 percent to Crespo.

Based on the jury's verdict, the trial court entered judgment for $8,620 against the Delucas.[3] Dubord moved for a new trial on the grounds, among others, that the jury's

---

[1] Although Dubord named Crespo as a defendant in her pleadings and took his deposition, Dubord's counsel informed us at oral argument that Crespo was never served with a summons or complaint. He is not a party to this appeal.

[2] In accordance with the doctrine of negligence per se (Evid. Code, § 669), the trial court instructed the jury that (1) a violation of state statutes and regulations requiring installation of smoke detectors in and near bedrooms (Health & Saf. Code, § 13113.7, subds. (a)-(c); 2007 Cal. Fire Code, § 907.2.10.1.2) had been established and was not an issue for the jury to decide; (2) the jury had to decide whether the violation was a substantial factor in harming Dubord; and (3) if the jury decided the violation was such a substantial factor, it had to find the Delucas were negligent. (See CACI No. 419.)

[3] The amount included 70 percent of the award of economic damages (70% X $12,000 = $8,400), for which the Delucas and Crespo are jointly liable (Civ. Code,

3

award of $0 for future general damages was inadequate, and it was improper to allow the jury to allocate fault to Crespo. (Code Civ. Proc., § 657, subds. 1, 5.) After the court denied the motion, Dubord filed a notice of appeal from the judgment (D063254). (*Id.*, § 904.1, subd. (a)(1).)

The parties then litigated the issue of costs. The trial court ruled Dubord was liable for the Delucas' costs because the amount of the judgment she recovered against them was less than the amount of their pretrial settlement offers. (Code Civ. Proc., § 998, subd. (c)(1).) The court awarded the Delucas their costs and expert witness fees ($54,735.76); subtracted the amount of damages they owed Dubord ($8,620); and entered an amended judgment in favor of the Delucas for the difference ($46,115.76). (*Id.*, § 998, subd. (e).) Dubord filed a notice of appeal from the order awarding costs (D063841). (*Id.*, § 904.1, subd. (a)(2).)[4]

We consolidated the two appeals.

---

§ 1431), plus 20 percent of the award of noneconomic damages (20% x $1,100 = $220), for which the Delucas are only severally liable (*id.*, § 1431.2, subd. (a)).

[4] The caption page of Dubord's notice of appeal states the appeal is taken from the amended judgment. Because the only substantive change the amended judgment made to the original judgment was to award costs, we deem the amended judgment a separately appealable postjudgment order and deem the appeal to have been taken from that order. (See *Fish v. Guevara* (1993) 12 Cal.App.4th 142, 147-148 [postjudgment order awarding expert witness fees under Code Civ. Proc., § 998 must be appealed separately from judgment]; *In re Marriage of Loya* (1987) 189 Cal.App.3d 1636, 1638 [appealability of judgment or order is determined by its substance and effect, not its label].)

DISCUSSION

Dubord challenges the judgment on two grounds: (1) the jury erroneously allocated to Crespo a portion of the liability for her injuries, and (2) the award of $0 for future pain and suffering was inadequate as a matter of law. She also challenges the order awarding the Delucas costs on the ground their pretrial settlement offers did not comply with Code of Civil Procedure section 998. None of these challenges has merit.

A.       *The Jury Properly Allocated Fault to Crespo*

We first consider Dubord's contention that because the jury was not properly instructed on how to apportion fault for her injuries, it erroneously allocated to Crespo a portion of that fault.

1.       *Additional Background*

In her operative complaint, Dubord named Crespo as a defendant. She alleged Crespo was a "partial equitable owner[]" of the property who sublet the guest house to her; he negligently failed to install adequate smoke detectors; and, as a result, she did not receive warning and was injured when the guest house caught fire.

During the presentation of evidence at trial, Dubord played excerpts from Crespo's videotaped deposition. Crespo testified he sublet the guest house to Dubord and received monthly rental payments from her, but the Delucas neither agreed to the sublease nor received any portion of the monthly rental payments. Crespo also testified he bought two space heaters for the guest house and installed a new smoke detector in the kitchen, but there were no smoke detectors in the other rooms.

5

At a conference held after the close of evidence, the parties' counsel discussed with the trial court questions concerning apportionment of fault to be included in the special verdict form. Dubord's counsel objected to including Crespo in the verdict "because there was no substantial evidence of his negligence," and because in interrogatory responses the Delucas stated they did not contend Crespo contributed to the fire. In response, the Delucas' counsel argued evidence introduced at trial indicated Crespo was negligent in subletting the guest house without first making it safe. Dubord's counsel disagreed, stating Crespo "was nothing but a renter" and had no duty to make the guest house safe. The court ruled it would give the jury the special verdict form that included questions about Crespo's negligence.

The trial court then instructed the jury with several instructions concerning negligence, including the elements of Dubord's negligence claim against the Delucas (CACI No. 400), the basic standard of care (CACI No. 401), the comparative fault of Dubord (CACI No. 405), negligence per se (CACI No. 419), the substantial factor test for causation (CACI No. 430), and causation when there are multiple causes (CACI No. 431). The court did not specifically instruct the jury on apportioning fault among multiple tortfeasors (CACI No. 406) or on premises liability (CACI Nos. 1000-1012). Although Dubord initially requested instructions on premises liability, she withdrew that request after the close of evidence.

After the trial court instructed the jury, counsel presented closing arguments. With respect to Crespo's liability for Dubord's injuries, the Delucas' counsel argued:

6

"If by any chance you find that [the Delucas] were a substantial factor [in bringing about Dubord's harm], you have to evaluate the conduct of [Crespo].  You have to evaluate further the conduct of [Dubord].  And [Dubord's counsel] is going to stand up and do the rebuttal, and he's going to say, 'But [the Delucas] said [they were not] blaming Crespo.'

"We're not the ones who decide whether [Crespo] is at fault for anything or not.  You folks are.  That's solely within your purview.  You look at [Crespo].  He rented a unit without permission in violation of the lease . . . ."

"Now, in this case, ladies and gentlemen, you have the right to assign liability whichever way you find and in what proportion you find.  And I'm only suggesting that the ball got rolling in this whole deal because [Crespo] rented without permission and in violation of this lease."

Dubord's counsel argued that during discovery the Delucas submitted responses under penalty of perjury stating that they did not think Crespo caused or contributed to the fire.  Counsel further argued that only after the Delucas thought they might be losing at trial did they try "to share fault [with Crespo] so that the amount of damages [would] come down in this case."  But Dubord's counsel insisted Crespo was "nothing but a renter" and was not responsible for the fire that injured Dubord.

2.      *Legal Analysis*

A special verdict apportioning fault among multiple tortfeasors is appropriate when a plaintiff seeks to recover noneconomic damages for personal injuries.  In such an action, "the liability of each defendant for non-economic damages shall be several only and shall not be joint.  Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault . . . ."  (Civ. Code, § 1431.2, subd. (a).)  Under section 1431.2, "a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate

7

share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of 'defendant[s]' present in the lawsuit." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 603 (*DaFonte*).) "The finder of fact must therefore consider *all others whose conduct contributed to the plaintiff's injury*, whether or not they are named as defendants and regardless of their economic circumstances." (*Collins v. Plant Insulation Co.* (2010) 185 Cal.App.4th 260, 267 (*Collins*), italics added; accord, *Arena v. Owens-Corning Fiberglas Corp.* (1998) 63 Cal.App.4th 1178, 1196 (*Arena*) [noneconomic damages "must be apportioned among the ' " 'universe' of tortfeasors" including "nonjoined defendants" ' "].)

Under these authorities, Crespo was properly included in the special verdict form for purposes of apportioning fault. Dubord sued Crespo for negligently subletting the guest house without adequate smoke detectors; and she presented evidence at trial that he exercised control over the guest house by subletting it to her, installing a smoke detector, and providing space heaters. Thus, Crespo was within "the ' " 'universe' of tortfeasors" ' " whose liability for Dubord's noneconomic damages the jury had to apportion. (*Arena*, *supra*, 63 Cal.App.4th at p. 1196.) Crespo's absence from trial did not render it improper for the jury to assign him a portion of the fault for Dubord's injuries. (*DaFonte*, *supra*, 2 Cal.4th at p. 603; *Collins*, *supra*, 185 Cal.App.4th at p. 267.)

In challenging the jury's apportionment of fault, Dubord contends the jury could not allocate fault to Crespo because it was not properly instructed how to do so. Specifically, Dubord argues "no fault could be allocated to Crespo unless the Delucas proved a premises liability case against him"; the Delucas did not request, and the trial

8

court did not give, jury instructions on premises liability; and therefore "the jury was given no guidance as to what they needed to consider before allocating fault to [Crespo]." We disagree.

The record indicates the jury was adequately advised on how to apportion responsibility for Dubord's injuries. In determining the adequacy of instructions, we consider the instructions as a whole, the arguments of counsel, the state of the evidence, and any indication by the jury that it was misled. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580-581; *Bay Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 462.) Here, although the specific instruction on apportionment of fault (CACI No. 406)[5] was not given, the substance of that instruction was given. The trial court gave general instructions on how to assess liability for negligence that were as applicable to Crespo as they were to the Delucas, because evidence introduced at trial indicated Crespo was negligent for the same reason the Delucas were negligent, namely,

---

5      CACI No. 406 states: "[[*Name of defendant*] claims that the [negligence/fault] of [*insert name(s) or description(s) of nonparty tortfeasor(s)*] [also] contributed to [*name of plaintiff*]'s harm. To succeed on this claim, [*name of defendant*] must prove both of the following: [¶] 1. That [*insert name(s) or description(s) of nonparty tortfeasor(s)*] [was/were] [negligent/at fault]; and [¶] 2. That the [negligence/fault] of [*insert name(s) or description(s) of nonparty tortfeasor(s)*] was a substantial factor in causing [name of plaintiff's harm.] [¶] If you find that the [negligence/fault] of more than one person including [*name of defendant*] [and] [[*name of plaintiff*]/ [and] [*name(s) or description(s) of nonparty tortfeasor(s)*]]] was a substantial factor in causing [*name of plaintiff*]'s harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent. [¶] You will make a separate finding of [*name of plaintiff*]'s total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility. [¶] ['Person' can mean an individual or a business entity.]"

9

for failing to install smoke detectors in the guest house as required by law. A causation instruction informed the jury there could be more than one cause that combined to produce Dubord's harm. An instruction on comparative fault advised the jury the Delucas had to prove Dubord was negligent and her negligence was a substantial factor in causing her harm; and if it did so, it had to determine the percentage of Dubord's responsibility for her harm. Although a similar instruction was not given specifically as to Crespo, the jury could easily adapt the comparative fault instruction to him, especially since the special verdict form asked the same two questions about Crespo as it asked about Dubord: (1) Was he or she negligent? (2) If so, was his or her negligence a substantial factor in causing Dubord's harm? Immediately after these questions, the special verdict form instructed the jury to assign percentages of responsibility for Dubord's harm to the Delucas, Dubord, and Crespo. Counsel highlighted these portions of the special verdict form in closing arguments. Finally, the jury asked no questions about apportioning fault; properly completed the special verdict form; and assigned a portion of responsibility for Dubord's harm to Dubord, the Delucas, and Crespo. On this record, we hold the jury was adequately instructed on how to apportion fault to Crespo. (See *Bay Guardian Co.*, at p. 467 ["we must assume jurors are able to correlate, follow, and understand the court's instructions"].)

We further hold the jury did not need specific instructions on premises liability to assess Crespo's liability. "Premises liability is a form of negligence . . . " (*Brooks v. Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1619) in which "[t]he question is whether in the management of his property, the possessor of land has acted as

10

a reasonable person under all the circumstances" (*Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358, 372). As we have explained, the jury was able to answer that question on the evidence presented and the general negligence instructions given.

Finally, we reject Dubord's suggestion that she was taken by surprise by the inclusion of Crespo in the special verdict form, and that we should "articulate a rule precluding the jury from allocating fault to a nonparty unless the defendant gives fair notice during pretrial proceedings that he will seek such allocation." Dubord cites no authority that would support such a rule, and the record does not support her claim of unfair surprise. Dubord named Crespo as a defendant in her initial complaint and in her two amended complaints; alleged the same negligence claim against him as the one on which she proceeded to trial against the Delucas; and played for the jury excerpts of Crespo's videotaped deposition that supported her claim. Under these circumstances, and because the law requires allocation of liability for noneconomic damages among all tortfeasors responsible for a plaintiff's personal injuries, not just those present as defendants at trial (Civ. Code, § 1431.2, subd. (a); *DaFonte*, *supra*, 2 Cal.4th at p. 603; *Collins*, *supra*, 185 Cal.App.4th at p. 267), Dubord cannot plausibly claim she was unfairly surprised by the Delucas' request that Crespo be included in the special verdict form.

B.       *The Damages Awarded Are Not Inadequate as a Matter of Law*

We next address Dubord's argument the jury's award of no damages for future pain and suffering is inadequate as a matter of law because the jury found she will incur future medical expenses of $12,000.

11

1.    *Additional Background*

At trial, Dubord presented evidence of the mental and emotional injuries she suffered as a result of the fire. She testified that before the fire she had "mild anxiety" for which she took an anxiolytic once or twice a month. After the fire, she had daily bouts of anxiety and periodic episodes of depression. Dubord also had nightmares about the fire three to four days a week. For these ailments, she took sleeping pills, an antidepressant, and an anxiolytic.

In support of her claims for mental and emotional injuries, Dubord called Janice Carter-Lourensz, M.D., a psychiatrist, as an expert witness. Based on her interview and examination of Dubord, Dr. Carter-Lourensz testified Dubord had a pre-existing anxiety disorder, which was "substantially exaggerated" by her near-death experience in the fire and partially contributed to the post-traumatic stress disorder she developed as a result of that experience. According to Dr. Carter-Lourensz, the post-traumatic stress disorder "has had a profound effect on [Dubord], and it's affected her in multiple ways regarding her personality, regarding her future, regarding her future relationships." According to Dr. Carter-Lourensz, post-traumatic stress disorder is "a chronic condition" that "may not fully go away" and "tends to resurface" if "not fully dealt with." She therefore recommended a course of cognitive behavior therapy lasting 18 to 24 months and costing approximately $40,000 to "substantially reduce[]" Dubord's symptoms.

The Delucas also called a psychiatrist, Mark Kalish, M.D., to testify as an expert witness about Dubord's mental and emotional injuries. Dr. Kalish testified that before the fire, Dubord had been treated for anxiety disorder, depression, and panic disorder. Based

12

on his interview of Dubord, a review of her medical records, and the results of psychiatric tests, Dr. Kalish concluded Dubord suffered from a generalized anxiety disorder, which he described as a "general kind of low-level of anxiety, nervousness," which "at times . . . gets worse." He was "certain after the fire, her anxiety level went up for some period of time, but she's returned to her baseline level." According to Dr. Kalish, Dubord would have required three to six months of weekly psychotherapy visits and six months of antidepressant and anxiolytic medications to ameliorate any symptoms she had as a result of the fire. "After that," he testified, "she's back to her baseline, and whatever treatment she needs wouldn't be as a result of the fire." Dr. Kalish estimated the cost of the psychotherapy at $175 to $200 per visit and the cost of the medications, which "seem[ed] to be working for her," at $3 per day.

In closing arguments, the only economic damages Dubord's counsel asked the jury to award were the $40,000 for the cost of the cognitive behavior therapy recommended by Dr. Carter-Lourensz. Counsel also suggested the jury award Dubord $150,000 for past pain and suffering and $1.16 million for future pain and suffering.

2.      *Legal Analysis*

"A reviewing court must uphold an award of damages whenever possible [citation] and all presumptions are in favor of the judgment [citations.]" (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 61 (*Bertero*).) "The question as to the amount of damages is a question of fact. In the first instance, it is for the jury to fix the amount of damages, and secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy. Whether the contention is that the damages fixed by the jury are

13

too high or too low, the determination of that question rests largely in the discretion of the trial judge. The appellate court has not seen or heard the witnesses, and has no power to pass upon their credibility. Normally, the appellate court has no power to interfere except when the facts before it suggest passion, prejudice or corruption upon the part of the jury, or where the uncontradicted evidence demonstrates that the award is insufficient as a matter of law. In determining whether there has been an abuse of discretion, the facts on the issue of damage most favorable to the respondent must be considered." (*Gersick v. Shilling* (1950) 97 Cal.App.2d 641, 645; accord, *Miller v. San Diego Gas & Elec. Co.* (1963) 212 Cal.App.2d 555, 558-559.)

Viewed most favorably to the Delucas, the evidence concerning Dubord's future pain and suffering supports the jury's verdict. Dubord, Dr. Carter-Lourensz, and Dr. Kalish all testified that Dubord suffered from anxiety before the fire, and Drs. Carter-Lourensz and Kalish both testified that the fire aggravated her symptoms. Although Dr. Carter-Lourensz testified Dubord's condition is chronic and she would benefit from $40,000 worth of additional treatment to reduce her symptoms and to prevent them from recurring, Dr. Kadish testified Dubord had already returned to her baseline condition and would have required at most approximately $5,700 worth of treatment to have gotten there. Based on this conflicting testimony, the jury reasonably could have concluded that Dubord would not experience future symptoms above the level of her baseline condition, provided she received some future psychiatric treatment to prevent the aggravated symptoms from recurring, and that the reasonable cost of such treatment lay somewhere between the figures estimated by Drs. Carter-Lourensz and Kalish. It was the province of

14

the jury to assess the credibility of these witnesses and to resolve the conflicts in their testimony; and in doing so the jury did not have to adopt one witness's view and reject the other's, but could consider and combine parts of both in reaching its decision. (*Liberty Mut. Ins. Co. v. Industrial Acc. Com.* (1948) 33 Cal.2d 89, 94; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 633.) Indeed, by awarding Dubord only a portion of the future medical expenses she claimed but no damages for future pain and suffering, it appears the jury accepted parts of each expert's testimony and rejected others. We therefore must uphold the jury's verdict. (See *Bertero*, *supra*, 13 Cal.3d at p. 61 ["reviewing court must uphold an award of damages whenever possible"]; *San Diego Metropolitan Transit Development Bd. v. Cushman* (1997) 53 Cal.App.4th 918, 931 [in considering expert testimony on damages, the "jury had the power to give whatever weight it chose to the evidence in making its final determination"]; *Miller v. San Diego Gas & Elec. Co.*, *supra*, 212 Cal.App.2d at p. 559 [" 'the facts on the issue of damage most favorable to the respondent must be considered' "].)

Dubord contends we must reverse the judgment because "California courts have long recognized that an award of future medical expenses without future non-economic damages is inadequate as a matter of law." We disagree. None of the cases Dubord cites — *Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931 (*Dodson*); *Gallentine v. Richardson* (1967) 248 Cal.App.2d 152 (*Gallentine*); and *Miller v. San Diego Gas & Elec. Co.*, *supra*, 212 Cal.App.2d 555 — considered damages for *future* pain and suffering, and none stated such a categorical rule. In fact, two of those cases stated a contrary rule: "It cannot be said . . . that because a verdict is rendered for the amount of

15

medical expenses or for a less amount the verdict is inadequate as a matter of law. *Every case depends upon the facts involved.*" (*Miller v. San Diego Gas & Elec. Co.*, *supra*, at p. 558, italics added; accord, *Dodson*, at p. 936.)[6] As we shall explain, the facts of this case are more comparable to those of *Miller v. San Diego Gas & Elec. Co.*, where the court affirmed a judgment awarding no damages for pain and suffering, than to those of *Dodson* or *Gallentine*, where the courts reversed judgments awarding no such damages.

*Dodson*, *supra*, 154 Cal.App.4th 931, was a slip-and-fall case in which the plaintiff had to have surgery to repair a herniated disk. The court held the jury's award of past medical expenses but nothing for past pain and suffering was inadequate as a matter of law, because a "plaintiff who is subjected to a serious surgical procedure must necessarily have endured at least some pain and suffering in connection with the surgery." (*Id.* at p. 938.) *Gallentine*, *supra*, 248 Cal.App.2d 152, involved a gunshot wound requiring surgery, and the court similarly held the jury's verdict awarding only past medical expenses and loss of earnings was inadequate "in a case where substantial

---

6      Courts in other states have also held an award of medical expenses unaccompanied by an award of damages for pain and suffering is not necessarily inadequate as a matter of law. (See, e.g., *Wichers v. Hatch* (2000) 252 Conn. 174, 176 [745 A.2d 789, 790] ["a jury verdict awarding economic but not noneconomic damages to a tort claimant is not improper as a matter of law"]; *Allstate Ins. Co. v. Manasse* (Fla. 1998) 707 So.2d 1110, 1112 ["The need for future medical expenses is often in dispute . . . . It does not necessarily therefore follow . . . that an award of future medical expenses requires an award of nonecomomic damages."]; *Cowan v. Flannery* (Iowa 1990) 461 N.W.2d 155, 159 ["We have not adopted an inflexible rule that every verdict awarding only damages for medical expenses in a personal injury action is inadequate as a matter of law."]; *Miller v. Swift* (Ky. 2001) 42 S.W.3d 599, 601 [Kentucky law "does not require a jury to award damages for pain and suffering in every case in which it awards medical expenses"].)

16

general damages were obviously incurred." (*Id.* at p. 155.) Unlike the plaintiffs in *Dodson* and *Gallentine*, Dubord did not suffer a serious injury requiring surgery, she did not prove any past medical bills, and it was not obvious from the nature of her injuries that she would necessarily experience substantial pain and suffering in the future as a result of the fire.

This case is factually closer to *Miller v. San Diego Gas & Elec. Co.*, *supra*, 212 Cal.App.2d 555, where the plaintiff claimed discoloration, blistering, and sloughing of the skin on her arm and associated nervous and mental damage as a result of the defendant's negligence, and the jury awarded only the exact amount of the plaintiff's past medical bills. The court noted "there was a substantial conflict as to whether plaintiff received any substantial injury and as to whether bills incurred for medical examinations and treatment were rendered necessary by reason of the [defendant's negligence] or whether they were necessary at all." (*Id.* at p. 560.) Under such circumstances, the court held, "a verdict may properly be rendered for an amount less than, or for no more than the medical expenses." (*Id.* at p. 559.) Similarly here, based on the conflicting testimony introduced at trial concerning the nature and extent of Dubord's injuries and her need for future psychiatric treatment, the jury properly could return a verdict awarding Dubord only a portion of her claimed future medical expenses.

C.      *The Trial Court Properly Awarded Costs to the Delucas*

Finally, we take up Dubord's contention the trial court should not have awarded the Delucas costs and expert witness fees because their pretrial settlement offers did not comply with Code of Civil Procedure section 998.

17

1.      *Additional Background*

More than a year before trial commenced, the Delucas made the following settlement offer to Dubord and her counsel:

> "[The Delucas] hereby offer to settle this matter for the sum of <u>TWELVE THOUSAND AND ONE DOLLARS AND NO CENTS</u> ($12,001.00), each party to bear all costs, including but not limited to cost of suit, experts and attorneys fees.
>
> "You may accept this offer by notifying us of your acceptance in writing.
>
> "If this offer is not accepted and [Dubord] fails to obtain a more favorable judgment, [Dubord] shall not recover her costs and shall pay the [Delucas'] costs from the date of filing the Complaint, along with a reasonable sum to cover the costs of expert witnesses, pursuant to *California Code of Civil Procedure § 998(c)*."

Dubord did not accept this settlement offer.

Approximately 20 days before trial commenced, the Delucas made another settlement offer to Dubord and her counsel.  The second offer increased the settlement amount to $40,001; requested from Dubord a general release and a dismissal of the action with prejudice; and provided the parties would bear their own costs and attorney fees. The second offer again advised Dubord that if she did not accept the offer and failed to obtain a more favorable judgment, she would have to pay the Delucas' costs and expert witness fees pursuant to Code of Civil Procedure section 998.  On the same page as the terms of the settlement offer was a "**<u>NOTICE OF ACCEPTANCE</u>**," which stated:

"NOTICE IS HEREBY GIVEN that [Dubord], by an through her attorney of record, hereby accepts [the Delucas' section] 998 Offer to Compromise in the amount of Forty Thousand One Dollars and No Cents (**$40,001.00**) inclusive of any and all liens statutory

18

or otherwise." Immediately below this language were spaces for Dubord or her counsel to sign the notice of acceptance and to fill in the date and the signatory's name. Dubord did not accept this second settlement offer.

After trial, the Delucas filed a memorandum of costs, as did Dubord; and the parties filed motions to strike and tax directed at the opposing cost memorandum. In her motion, Dubord argued the Delucas were not entitled to recover any costs, because she was the prevailing party based on her recovery of a judgment for $8,620 against them, and their settlement offers were invalid under Code of Civil Procedure section 998. In their motion, the Delucas argued the section 998 offers were valid, and because Dubord did not recover a judgment for an amount greater than the amount of either offer, they were entitled to recover postoffer costs as well as expert witness fees. The trial court ruled the Delucas' settlement offers complied with section 998; determined the Delucas were the prevailing parties because they obtained a net monetary recovery; and awarded them costs and expert witness fees, less the amount of Dubord's judgment against them.

2.      *Legal Analysis*

Code of Civil Procedure section 998 provides for augmentation or withholding of costs in a pending action when a settlement offer to allow judgment to be taken has been made at least 10 days before the commencement of trial. (*Id*., § 998, subds. (a), (b).) As pertinent to this appeal, section 998 provides:

> "If an offer made by a defendant is not accepted and the plaintiff fails to
> obtain a more favorable judgment . . . , the plaintiff shall not recover his or
> her postoffer costs and shall pay the defendant's costs from the time of the
> offer. In addition, in any action or proceeding other than an eminent
> domain action, the court . . . , in its discretion, may require the plaintiff to

19

pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial . . . , or during trial . . . , of the case by the defendant." (*Id*., § 998, subd. (c)(1).)

To come within the scope of the statute, the settlement offer must be in writing, state the terms and conditions of the settlement and the proposed judgment, and include "a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted." (*Id*., § 998, subd. (b).) Further, "[a]ny acceptance of the offer, whether made on the document containing the offer or on a separate document of acceptance, shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the accepting party." (*Ibid.*)

Here, Dubord does not dispute that she failed to obtain a judgment greater than the amount of either of the Delucas' settlement offers. Instead, she argues neither offer complied with Code of Civil Procedure section 998. We disagree.

As to the Delucas' first settlement offer, Dubord contends the offer violated Code of Civil Procedure section 998, subdivision (b) because it did not include a notice of acceptance provision that could be accepted by signing the provision. Our colleagues in Division Three recently rejected the same contention made with respect to a settlement offer that stated: " 'If you accept this offer, please file an Offer and Notice of Acceptance in the above-entitled action prior to trial or within thirty (30) days after the offer is made.' " (*Rouland v. Pacific Specialty Ins. Co.* (2013) 220 Cal.App.4th 280, 287 (*Rouland*).) The court held:

"Nothing in the statute's language requires an offer to include either a line for the party to sign acknowledging its acceptance or any specific language

20

stating the party shall accept the offer by signing an acceptance statement. Indeed, no ' "magic language" ' or specific format is required for either an offer or acceptance under section 998. [Citations.] *The offer's acceptance provision simply must specify the manner in which the offer is to be accepted* [citations], *and the only statutory requirements for a valid acceptance mandate a written acceptance signed by the accepting party or its counsel* [citation]." (*Rouland*, at p. 288, italics added.)

The Delucas' first settlement offer satisfied these acceptance provision requirements because it specified how to accept the offer (by notifying the Delucas of acceptance in writing),[7] and the specified means of acceptance satisfied the statutory requirement for a valid acceptance (a writing signed by Dubord or her counsel). To be valid, the offer did not also have to include a notice of acceptance provision with a signature line for Dubord or her counsel to indicate acceptance. (See Code Civ. Proc., § 998, subd. (b) [acceptance may be "made on the document containing the offer *or on a separate document*" (italics added)]; *Rouland*, at p. 288 ["We may not impose any additional requirements or limitations that do not appear on the face of the statute."].)

Our conclusion the Delucas' first settlement offer was valid under Code of Civil Procedure section 998 makes it unnecessary to consider the validity of their second settlement offer. Our Supreme Court recently held a subsequent section 998 offer does not extinguish a prior offer for purposes of cost-shifting under the statute. (*Martinez v.*

---

7 The inclusion of a provision specifying the manner of acceptance in the Delucas' first settlement offer distinguishes this case from those on which Dubord relies for her claim the offer was invalid. (See *Boeken v. Philip Morris USA Inc.* (2013) 217 Cal.App.4th 992, 1001-1004; *Perez v. Torres* (2012) 206 Cal.App.4th 418, 422-426; *Puerta v. Torres* (2011) 195 Cal.App.4th 1267, 1270-1273.) "[T]he offers in those cases were silent on the manner of acceptance, and therefore the courts could invalidate the offers without specifying how to satisfy the acceptance provision requirement." (*Rouland*, *supra*, 220 Cal.App.4th at p. 286.)

21

*Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1017.)  Hence, regardless of the validity of the Delucas' second settlement offer, the trial court could properly award them costs and expert witness fees based on the first settlement offer.

DISPOSITION

The judgment (D063254) and the postjudgment order awarding costs (D063841) are affirmed.

IRION, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.

22