[No. B176286. Second Dist., Div. Four. Nov. 7, 2005.]

LINDA CAROLYN WEAVER et al., Plaintiffs and Appellants, v. FRANK CHAVEZ, JR., et al., Defendants and Respondents.

COUNSEL

Mathews & Rager, Charles T. Mathews, Jeffrey A. Ragar; Law Offices of Roxanne Huddleston and Roxanne Huddleston for Plaintiffs and Appellants.

Horvitz & Levy, Stephen E. Norris, Kim L. Nguyen; Klute & Pennell and E. Wallace Dingman for Defendants and Respondents.

## OPINION

**HASTINGS, J.**—In wet and rainy conditions, Linda Carolyn Weaver was injured when her car was struck by a commercial tractor-trailer unit owned and operated by respondents. At trial, her counsel requested that the jury be instructed pursuant to the federal standard of care provided within 49 Code of Federal Regulations part 392.14 (2005): "Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist."[1] The trial court refused and instead instructed the jury that the duty of care was that which was "reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface . . . ." (Veh. Code, § 22350.) We conclude the trial court erred and that its error was prejudicial. We reverse and remand for a new trial.

### BACKGROUND

At approximately 8:10 a.m. on the morning of December 21, 2001, Ms. Weaver was driving east in lane number four on the 210 Freeway in her Toyota Avalon. Traffic conditions were moderate to heavy and it was raining. The road was wet. As she passed the Citrus Boulevard on-ramp, a car driven by Miguel Gomez entered the freeway on her right. Gomez was traveling too fast for the conditions, lost control, and spun into Weaver's car, knocking it into the third lane of travel where it came to rest.

Respondent Frank Chavez, Jr., a commercial truck driver working for respondent Villa Park Trucking, Inc., was also traveling east on the 210 Freeway, in the third lane, operating a tractor-trailer unit owned by Villa Park. When Weaver's car spun out and came into the third lane, it stopped approximately 120 feet ahead of Chavez. Chavez engaged his brakes but started to jackknife. He managed to straighten out but could not stop in time and struck Weaver's car. Weaver sustained severe injuries.

---

[1] The regulation was promulgated pursuant to the 1994 Commercial Motor Vehicle Safety Act (49 U.S.C. § 31101 et seq.).

Weaver and her husband (appellants) filed suit alleging negligence against Gomez, Chavez, and Villa Park. Gomez was dismissed prior to trial and the action proceeded against respondents. It was undisputed that at the time of the accident it was raining and the roadway was wet. Chavez admitted he was traveling at 56 miles per hour and was going too fast, given the wet condition of the road, to stop in time to avoid hitting Weaver's car. The parties presented contradictory evidence regarding what speed Chavez should have maintained under the conditions to be able to avoid the accident.

At the beginning of trial, appellants' counsel presented the court with a motion in limine requesting that the court instruct the jury, in accord with 49 Code of Federal Regulations part 392.14 (2005), that on the date in question the conditions required a standard of "extreme caution" in the proper operation of the tractor-trailer. Respondents objected to the requested instruction based on various grounds. The court refused the request with the following statement: "If this were the law in California, there would be a published opinion that I would be mandated to follow. The Legislature has not taken up the issues separately and you may be on the frontiers of the law, but I think that I'm still on the other side of the forest. I'm going to deny the motion."

The court instructed the jury utilizing standard negligence and negligence per se instructions, the latter based on the basic speed law, as follows:

"Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

"A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

"You must consider how a reasonably careful person would have acted in Frank Chavez's situation. [¶] . . . [¶]

"The basic speed law of California as provided in section 22350 of the California Vehicle Code provides that, quote, 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.' Unquote.

"California Vehicle [C]ode section 22406 (A) (1) provides that no person may drive a motor truck or truck tractor having three or more axels or any

motor truck or truck tractor drawing any other vehicle on a highway at a speed in excess of 55 miles per hour.

"If you decide (1) that Frank Chavez, Jr., violated either of these laws and (2) that the violations were a substantial factor in bringing about the harm, then you must find that Frank Chavez, Jr., was negligent. If you find that Frank Chavez, Jr., did not violate either of these laws or that the violations—violation or violations were not a substantial factor in bringing about the harm, then you must decide—then you must still decide whether Frank Chavez, Jr., was negligent in light of the other instructions."

The jury returned a verdict in favor of respondents by a ten-to-two vote. The court entered judgment for Chavez and Villa Park and this appeal followed.

## DISCUSSION

■ "There is no doubt in this state that a federal statute or regulation may be adopted as a standard of care. [Citation.]" (*DiRosa v. Showa Denko K.K.* (1996) 44 Cal.App.4th 799, 808 [52 Cal.Rptr.2d 128]; see also *Evraets v. Intermedics Intraocular, Inc.* (1994) 29 Cal.App.4th 779, 791–792 [34 Cal.Rptr.2d 852]; *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 332 [277 Cal.Rptr. 753].)

The Commercial Motor Vehicle Safety Act (Act) was passed by Congress to promote the safe operation of commercial vehicles and to ensure compliance with safety regulations promulgated under the Act. (49 U.S.C. § 31131(a)(1), (3).) Although the Act does not generally preempt state laws and regulations, of importance here is the following regulation: "Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a [federal] regulation . . . imposes a higher standard of care than that [state] law, . . . the . . . regulation must be complied with." (49 C.F.R. § 392.2 (2005).)

As focused by respondents' arguments on appeal, there are two issues presented. Does the federal regulation require a higher duty of care than the California basic speed law? If so, did omission of the instruction prejudice Weaver?

In connection with the standard of care, respondents argue there is no practical distinction between the federal requirement that a commercial driver use "extreme care" under inclement conditions and the care required of a

vehicle operator under the California basic speed law. Thus, they conclude, the court did not err when it rejected the federal standard. We cannot agree.

■ "We construe statutes and regulations in a manner that carries out the legislative or regulatory intent. [Citation.] We must ' "ascertain the intent of the [drafter] so as to effectuate the purpose" ' of the regulations. [Citation.] The words used are the primary source for identifying the drafter's intent. [Citation.] We give those words their usual and ordinary meaning where possible. [Citations.] We give significance to every word, avoiding an interpretation that renders any word surplusage. [Citation.] We also interpret the words of a regulation in context, harmonizing to the extent possible all provisions relating to the same subject matter. [Citation.]" (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1505–1506 [1 Cal.Rptr.3d 207].)

■ Comparing the basic speed law instruction utilized by the court with the federal regulation proposed by appellants, each requires the operator of a vehicle to consider inclement weather and additional hazards which may result from operation of a vehicle under such conditions. Each suggests that the operator must increase his or her diligence in how the vehicle is operated. But the standard of diligence in each is different. The basic speed law requires only that a driver shall not drive at a speed "greater than is *reasonable or prudent* having *due regard* for weather . . . ." (Veh. Code, § 22350, italics added.) The federal standard requires the driver of a commercial vehicle to use "extreme caution" and to reduce speed when hazardous conditions exist. (49 C.F.R. § 392.14 (2005).)

■ Respondents contend that the phrasing of the last clause of the basic speed law, "and in no event at a speed which endangers the safety of persons or property" (Veh. Code, § 22350), brings the standard to the same level as the federal standard. But that particular phrase must be construed in context of the instruction as a whole, which told the jury to measure the actions of Chavez in accord with the actions of a reasonable and prudent person. A reasonable person standard is not consonant with a standard of extreme care.

Black's Law Dictionary, Sixth Edition (1990) page 1265, defines "reasonable care" as "[t]hat degree of care which a person of *ordinary* prudence would exercise in the same or similar circumstances. [Citation.]" (Italics added.) The same source does not define the phrase "extreme care," but it does define the word "extreme" in the appropriate context as "[g]reatest, highest, strongest, or the like." (*Id.* at p. 588.)

The distinction is also recognized within the recent Civil Jury Instructions (CACI) adopted by the Judicial Council of California. CACI No. 401 states that "Negligence is the failure to use reasonable care to prevent harm to

oneself or to others." In contrast, CACI No. 414 provides an alternative standard where dangerous activities or items are involved: "People must be extremely careful when they deal with dangerous items or participate in dangerous activities. . . . The risk of harm is so great that the failure to use *extreme caution* is negligence." (Italics added.)

The use note to CACI No. 414 cites to the case of *Borenkraut v. Whitten* (1961) 56 Cal.2d 538 [15 Cal.Rptr. 635, 364 P.2d 467]. There, plaintiff was injured when an explosion occurred while attendants at a gas station poured gasoline into a carburetor in an attempt to start a stalled car. Defendants prevailed in the trial court and on appeal plaintiff objected that the trial court had failed to instruct the jury on the heightened standard of "extreme caution." The Supreme Court agreed it was error for the trial court not to so instruct the jury: "Thus, the refused instruction correctly stated the law as applied to the undisputed facts of this case. The claim of defendants that the general instruction offered by them . . . was sufficient for this purpose, is not sound. The language of the instruction given is general, and plaintiff was entitled to have the jury instructed specifically on her theory of the case. [Citation.] She should not have been required to rest upon generalities, but was entitled to have the jury instructed in terms that related the degree of care to the circumstances peculiar to the case being tried [citation]. Since plaintiff's case was tried upon this very theory of the distinction between the quantum of care required in ordinary circumstances, and that required of persons handling materials inherently dangerous to human life, it was error to refuse the requested instruction." (*Id.* at pp. 545–546.)

We turn to the issue of prejudice. Congress determined that regulation of commercial trucking was appropriate to ensure public safety and it passed the Commercial Motor Vehicle Safety Act. The Act delegated promulgation of appropriate regulations to the Department of Transportation (49 U.S.C. § 31136), which passed 49 Code of Federal Regulations, part 392.14, prescribing the appropriate standard of care when hazardous conditions exist. It was appellants' theory of the case that the conditions present at the time of the accident required application of the higher standard, and substantial evidence supports the theory. Because the jury was not so instructed, it was not required to measure the actions of Chavez under the heightened standard of care.

■ A "miscarriage of justice" exists when, after examining all the evidence, we conclude " ' "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163].) Several factors must be taken into consideration in determining whether prejudice resulted: (1) the effect other instructions may have had; (2) whether respondents' argument to the jury may have

contributed to misleading the jury; (3) the degree of conflict in the evidence; (4) did the jury request a rereading of instructions or indicate confusion; and (5) the closeness of the jury's verdict. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570–571 [34 Cal.Rptr.2d 607, 882 P.2d 298]; *Pool v. City of Oakland,* at p. 1069.)

Beginning with the first factor, the jury instructions as a whole provided an incorrect standard of care: the "reasonable person" standard. Respondents counter with the argument that appellants were able to put on their entire case before the jury, citing *Soule v. General Motors Corp., supra,* 8 Cal.4th at page 580. They point out that their own expert, Kerry Berg, testified that he believed there is a law which requires a commercial truck driver to use extreme caution under hazardous conditions. But respondents misinterpret the ability to present evidence with appellants' right to have that evidence reviewed under the correct standard of care.

The second factor, the degree of conflict of the evidence, also supports appellants. The primary issue at conflict was whether Chavez was driving at a proper speed for the weather conditions. Respondents' expert testified to what a "reasonable" speed would have been, in harmony with the court's instructions. Officer Peregrina used the term "feasible" and spoke of the 55 mile per hour standard, citing the California Highway Patrol's grace period of an extra five miles per hour before ticketing a speeding offender. Witness testimony differed on what speed would have been required of Chavez to avoid the accident under the circumstances. These conflicts were addressed by the jury using the wrong standard.

The third factor, counsel's arguments, enhanced the prejudice created by the lack of proper jury instructions. In closing argument, respondents' counsel emphasized the definition of negligence as something a reasonably careful person would do in the same situation. He repeated the term "reasonable" in referring to the speed at which Chavez was traveling and argued the accident was unavoidable "even at a super reasonable speed." While appellants' counsel mentioned the concept of extreme caution, the jury was not instructed that was the applicable standard. Instead, the court provided additional instructions which contravened any attempt to focus the jury on the greater standard: "You must follow the law exactly as I give it to you, even if you disagree with it. If the attorneys have said something different about what the law means, you must follow what I say."

It is true the jury did not address any questions to the court involving the standard of care, but the jury was not unanimous in its verdict. We conclude it is reasonably probable a result more favorable to appellants would have been obtained had the jury been properly instructed.

## DISPOSITION

The judgment is reversed and the matter is remanded for a new trial. Appellants shall have their costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

A petition for a rehearing was denied December 1, 2005, and respondents' petition for review by the Supreme Court was denied January 25, 2006, S139704. Chin, J., did not participate therein.